ROBY & NICHOLS v. MEYER & BULTE.

No. 7378.

1. **Duty of Assignee to Protect Property.** — After an assignee has accepted and taken possession of the estate assigned, it is his duty to protect the property assigned to him; and if it is unlawfully seized or damaged, it is his duty to take such steps as may be necessary to remedy the wrong. This applies to an unlawful seizure of the goods by a creditor of the assignor under attachment.

2. **Wrongful Attachment—Case in Judgment.**—A firm engaged in the mercantile business made an assignment for benefit of accepting creditors. One creditor firm sued out an attachment, upon the ground "that defendants have disposed of their

property with intent to defraud their creditors." Under the attachment part of the goods were taken from possession of the assignee and sold—sale for less than value. Suit by the assigning debtors against the plaintiffs in attachment for wrongfully suing out the attachment, for causing sacrifice of the assigned stock, destroying or injuring the credit and financial standing of the assignors as merchants. *Held:*

1.   That action for damages caused by the wrongful and malicious attachment after the assignment vested in the assignee, and damages could only be recovered by him.

2.   In view of the assignment as insolvents for benefit of their creditors, the claim for damages for injury to their commercial standing must be considered as speculative and no cause of action.

3.   The petition is insufficient as an action for slander; such action should have been formulated in a count complete in itself.

APPEAL from Guadalupe. Tried below before Hon. GEORGE MC-CORMICK.

No statement is necessary.

*W. M. Rust,* and *W. R. Neal,* for appellants.— 1.   A valid assignment vests the assigned estate in the assignee, so as to put it out of the reach of creditors. Blum v. Welborne, 58 Texas, 157; Piggott v. Schram & Co., 64 Texas, 450; Johnson v. Robinson, 68 Texas, 402; Moody v. Carroll, 71 Texas, 143; 1 Am. and Eng. Encyc. of Law, p. 871, and authorities cited.

2.   An assignor has an equal interest with his creditors in having the proceeds of the assigned property properly applied to the payment of his debts, in order to clear himself of debt, maintain his credit, and obtain his discharge. Sayles' Civ. Stats., arts. 65a, 65c, 65f, 65m.

3.   The assignor is entitled to a return of any surplus after the debts are paid; and if not so expressed in the deed of assignment, is implied. 1 Am. and Eng. Encyc. of Law, p. 864, and authorities cited.

4.   An action for the malicious abuse of legal process, and for malicious prosecution and slander, being personal torts, do not pass to an assignee for the benefit of creditors. 1 Am. and Eng. Encyc. of Law, p. 832, and authorities cited; Burr. on Assign., secs. 100, 103, and authorities cited; Somner v. Welt, 4 S. & R. (Pa.), 19, 28.

5.   In a damage suit for the wrongful suing out of an attachment, plaintiff can prove his business capacity, good credit, amount of liabilities, capital in business, and profits; and the value of his credit is a conclusion to be drawn from the facts by the jury. Kauffman & Runge v. Babcock, 67 Texas, 241; Turner v. Strange, 56 Texas, 142.

*Burges & Dibrell,* for appellees.—1.   A valid statutory assignment puts the estate of the assignor out of the care, control, and management of such assignor, and any injury to said property gives the right of action to the assignee, and to no one else. In no case can an injury to assigned property furnish a cause of action to the assignor, as the as-

signee is compelled to guard the interest of the assignor and creditors alike.    Burr. on Assign., pp. 729–731, 622–625.

2.    Where property is seized in the hands of an assignee, it is his duty under the law to take steps to recover the property or sue for its value; and if he fails so to do, the creditors of the assignor have a full and ample remedy against the assignee on his bond, so that no damage possibly can result to the assignor by virtue of an unlawful seizure. Burr. on Assign., sec. 394.

3.    While it is true that the assignor may be entitled to a return of any surplus after the debts and expenses of the assignment are paid, yet having intrusted the assignee with his property, he can only look to such assignee for such surplus.    It would be no answer on the part of the assignee that the surplus had been seized unlawfully.    If the seizure was lawful, then neither assignor nor assignee could complain. Burr. on Assign., sec. 272.

4.    A party who sues as a merchant for damages done his reputation and credit has no cause of action unless he is actually engaged in business.    With greater reason is this true where the merchant, from whatever cause, assigns his estate for the benefit of his creditors.    Hunt v. Kellum & Rotan, 59 Texas, 535.

5.    When a merchant makes an assignment of all his property for the benefit of his creditors, the presumption of law is, that the property assigned is no more than equal to the debts due, and the assignor is nowise in a different attitude from a legal standpoint than an insolvent or bankrupt.    Burr. on Assign., p. 95.

HENRY, ASSOCIATE JUSTICE.—The appellants brought this suit to recover damages.    The court sustained a general demurrer to their petition and dismissed their suit.

The averments of the petition were substantially as follows:

"Plaintiffs were merchants and partners trading and doing business in the town of Seguin, in Guadalupe County, in the State of Texas, under the firm name and style of Roby & Nichols, and had been so doing business under said firm name at said place for several years prior to said 11th day of November, 1886.    On said day the plaintiffs, being indebted to defendants and to others, and embarrassed in their business as merchants on account of the stringency of the money market, the dullness of business, and the difficulty of making collections and sales to meet the indebtedness, as well as the inability of W. S. Roby, one of the plaintiffs, to attend to any active business, owing to an accident that rendered him for a time wholly incapacitated to transact any business requiring physical exertion, they deemed it best for their creditors to make an assignment under the law for the benefit of their creditors; that on said 11th day of November, 1886, plaintiffs made an assignment, and conveyed to P. S. Sowell, as their assignee, all their property, both

real and personal, of every description, for the benefit of all their creditors who would accept of the same, and provided for a pro rata distribution of the proceeds among their said creditors in proportion to their respective claims; that defendants were creditors of plaintiffs so provided for in said assignment; that plaintiffs were indebted to them on their claim in the sum of $540; that disregarding the assignment so made as aforesaid by plaintiffs for the benefit of all their creditors, defendants by their agent and representative John D. Aden, wrongfully, willfully, slanderously, and maliciously, and with the intent to injure plaintiffs, sued out an attachment on the 12th day of November, 1886, by filing their petition in the District Court of Guadalupe County, Texas, and making oath to the truth of the same before the clerk of the said District Court, which petition and verification was substantially as follows:

" 'Petitioners allege, that said Roby & Nichols bought of petitioners Meyer & Bulte certain goods at the price of $407.36, and for which, with exchange, petitioners drew, on September 16, 1886, their draft on said Roby & Nichols, payable to the order of said Meyer & Bulte seventy-five days after date, and which said Roby & Nichols, on October 14, 1886, accepted in writing; and petitioners allege, that the said Roby & Nichols, on October 13, 1886, being indebted to petitioners for goods in the sum of $180.48, the petitioners aforesaid, on said last named date, drew a draft for said last named sum, with exchange, on Roby & Nichols aforesaid, payable seventy-five days after date, and which the said Roby & Nichols accepted in writing, whereby said Roby & Nichols became liable and promised to pay to petitioners the said drafts as soon as the same should become due, which will be seventy-five days after September 16, 1886, on the first named draft, and seventy-five days after October 13, 1886, on the draft named last herein before. Petitioners further allege, that the said defendants Roby & Nichols are justly indebted to petitioners in the above named amounts, not yet due, however, and that the defendants have disposed of their property with intent to defraud their creditors; and the petitioners allege, that the attachment they apply for is not sued out for the purpose of injuring or harassing the defendants, and that the plaintiffs will probably lose their debt unless such attachment is issued.' "

The petition charges, that "when the writ of attachment was sued out the defendants in this suit well knew that plaintiffs had made the aforesaid deed of assignment, and that by defendants' direction said sheriff levied upon the greater portion of the stock of goods, wares, and merchandise, worth $3000, which plaintiffs had so as aforesaid assigned for the benefit of all their creditors; that said levy was made on the 12th day of November, 1886, and after plaintiffs' assignment had been made and filed for record; that after said suing out of attachment and levy by defendants, other of plaintiffs' creditors were induced by said

acts to attach said assigned property of plaintiffs; that by reason of the wrongful and malicious suing out of attachments by defendants, the assets so honestly and legally assigned for the benefit of all their creditors were illegally taken and sold and sacrificed for a mere pittance; that the property assigned to P. S. Sowell, for the benefit of plaintiffs' creditors, was reasonably worth the sum of $6500; and plaintiffs allege, that if their said assignee had not been interfered with and had been allowed to make sale of the goods and chattels and lands so conveyed to him within the time allowed him by law, he could and would have realized enough out of said assets to pay off and discharge all the indebtedness of plaintiffs; and plaintiffs could, within six months after said assignment, have resumed business with their debts paid and their credit unimpaired; whereas by the wrongful suing out of said attachment by defendants, and the slander upon their good name and credit contained in plaintiffs' petition herein before set out, and which is sworn to by defendants' agent (Aden), plaintiffs' property so assigned to their creditors has been sacrificed and the proceeds eaten up by costs and charges, without paying their honest debts (including that of defendants); that other creditors of plaintiffs have been induced by the acts of defendants to refuse to accept the assignment so made by plaintiffs, and to levy other attachments, and that plaintiffs' honest efforts to pay as far as possible their just debts have been frustrated by the illegal and wrongful acts of defendants; that plaintiffs' credit has been destroyed, and they have been brought into disrepute among their neighbors and friends, and have suffered cruel wrongs and outrages in the loss of property, in the loss of credit, and in their feelings and their standing as merchants and members of society, by reason of the aforesaid illegal, slanderous, and wrongful acts of defendants; that said John D. Aden, agent of defendants, in suing out said writ of attachment, did so under the direction and at the instance of defendants; that said attachment was wrongfully, willfully, slanderously, and maliciously sued out by said defendants, acting through their said agent, John D. Aden; that there were no good grounds or good and valid excuse for suing out said attachment; that said John D. Aden, agent as aforesaid, well knew at the time he sued out said writ of attachment that there was no valid cause therefor, and that the same was illegal, but that he did the same wrongfully, willfully, slanderously, and maliciously, for the purpose of injuring and oppressing these plaintiffs, and without any probable cause; and that defendants, knowing there was no legal cause for issuing said writ of attachment, and for the purpose of injuring and oppressing these plaintiffs, instructed their said agent John D. Aden to have said attachment issued and levied on the property; that these plaintiffs had so as aforesaid assigned to P. S. Sowell for the benefit of their creditors, and that defendants since the issuance of said writ of attachment, and knowing the malicious intent of the said John D. Aden

in suing out the said writ of attachment, have approved and ratified the acts of their said agent as aforesaid, by giving bond of indemnity to the sheriff, McGuffin, for the wrongful act, by an application to the judge of the District Court, in vacation, for the immediate sale of the goods levied upon, while defendants' debt was not yet due, and by prosecuting the petition, sworn to by their said agent, to a final determination, and various other acts of ratification; that by reason of all these wrongful acts of defendants complained of, plaintiffs have been actually damaged in the sum of $15,000 for the injury to their property, to their credit, to their reputation, and to their feelings, and plaintiffs are entitled to exemplary damages in the sum of $10,000. Wherefore plaintiffs pray for process and for judgment for the sum of $15,000 actual and $10,000 punitory and exemplary damages, and for such other and further and general relief as in law and equity they may be entitled to have, and as in duty," etc.

It was the duty of the assignee to protect the property conveyed to him; and if it was unlawfully taken or damaged, it was his right and duty to take such steps as were necessary to remedy the wrong. If he failed to discharge such duties, the law provides adequate remedies against him, which could have been pursued by the plaintiffs or others interested in the assigned estate.

But it is contended by appellants, that their petition presented good causes of action for slander and malicious prosecution which did not vest in the assignee, and for which they alone could maintain an action.

The rule on the subject is stated in Burrell on Assignments, section 103, as follows: "Claims growing out of mere personal torts which die with the party and do not survive to his personal representatives are incapable of passing by an assignment."

Conceding the correctness of the proposition, and that a cause of action for the recovery of such damage existing at the date of the assignment would not have passed by it, but would have remained in the assignors, we think it must still be held that the court did not err in deciding that the plaintiffs' petition did not disclose a good cause of action in their favor. The claim for damages in these respects rests exclusively upon the allegations in the petition for the attachment, "that the defendants have disposed of their property with intent to defraud their creditors," and in the petition in this suit to the effect that the attachment was wrongfully sued out and caused the property assigned to be sold for less than its value, and destroyed or injured the credit and financial standing of the assignors as merchants. Damages caused by the wrongful and malicious issuance of the attachment after the assignment was executed vested in the assignee, and an action for them was maintainable by him and not by the assignors.

If the ground for attachment stated was untrue, the remedy for it was by a suit for the wrongful issuance of the attachment. Even if

the allegation was untrue and an action for slander could have been maintained, we do not think the petition contained averments essentially necessary to make it good in that respect. If the pleading had contained the necessary allegations to show a cause of action for slander, it should have been made to appear by a count complete within itself. Wallis v. Walker, 73 Texas, 11.

If the allegations of their commercial standing and credit had been otherwise sufficient, the damage claimed must be treated as entirely speculative and too remote when considered in connection with their other averments of their inability to pay their debts, and their execution of an assignment as insolvents.

We are unable to conclude that the petition of plaintiffs alleged good grounds for any damage that could not have been recovered by the assignee.

The judgment is affirmed.

*Affirmed.*

Delivered April 19, 1892.